Kluska v Montefiore St. Luke's Cornwall (2025 NY Slip Op 50718(U))

[*1]

Kluska v Montefiore St. Luke's Cornwall

2025 NY Slip Op 50718(U)

Decided on May 6, 2025

Supreme Court, Orange County

Williams, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 6, 2025
Supreme Court, Orange County

Edward Scott Kluska and KAREN KLUSKA, Plaintiffs,

against
Montefiore St. Luke's Cornwall, Defendant.

Index No. EF006030-2021

Jonathan Roman, Esq.
Attorney for Plaintiff
Doolan, Platt & Setareh, LLP
220 White Plains Rd Ste 315
Tarrytown, NY 10591-5894
Katherine Herr Solomon
Attorney for Defendant
Mauro Lilling Naparty LLP
100 Crossways Park Drive West
Woodbury, NY 11797

E. Loren Williams, J.

The following documents were read on defendant's motion for summary judgment (Seq. #4):
Seq. #4
Notice of Motion/Affidavits/Exhibits NYSCEF Doc # 87-102
Opposition/Affidavits/Exhibits NYSCEF Doc # 105-114
Reply Affidavits/Memo of Law NYSCEF Doc # 115-116
Factual and Procedural Background
This case involves injuries allegedly sustained by the plaintiff-patient while in defendant's facility receiving medical treatment, alleging negligence, medical malpractice, lack of informed consent, and loss of consortium. Principally, plaintiff alleged that he suffered pressure ulcers and wounds while in defendant's care, which were caused by the defendant's negligence.
The case was commenced on August 26, 2021. Defendant answered on September 30, 2021.
On October 21, 2022, defendant moved to dismiss the complaint on the grounds of immunity under the federal Public Readiness and Emergency Preparedness Act ("PREP Act") and that the federal courts had exclusive jurisdiction. On April 25, 2023, the Court denied the motion, holding that the Court had subject matter jurisdiction. The parties thereafter moved to reargue the Court's decision. On December 5, 2023, the Court denied the motion.
On May 8, 2024, the Appellate Division Second Department affirmed the Court's denial of the motion to dismiss. 
Defendant now moves for summary judgment, arguing it is immune under the former New York Emergency or Disaster Treatment Protection Act ("EDTPA") (see former Public Health Law §§ 3080-3082).
The following facts are generally undisputed, or not disputed with evidence in admissible form unless otherwise stated. Plaintiff submitted an uncontroverted expert affidavit from Dr. Perry Starer, M.D., discussing plaintiff's medical treatment and opining on the applicable standards of care. 
On January 16, 2021, plaintiff presented to defendant hospital with symptoms consistent with COVID-19, where he later tested positive. On January 17, 2021, plaintiff went into respiratory failure and was intubated and placed on a ventilator. He had no pressure ulcers upon admission. Defendant assessed plaintiff with a Braden score of 17[FN1]
. According to defendant's policy, a score of 16 or below puts a patient at risk of pressure ulcers; plaintiff was not identified as at risk for pressure ulcers. Dr. Starer opined that this is incorrect, as a score of 19-23 is considered "no risk." Plaintiff contends that the failure to start turning and repositioning protocols on the 17th was a substantial factor in the development of plaintiff's pressure ulcer. 
During plaintiff's hospitalization, defendant maintained handwritten records called "Turn & Position for Wound Prevention and Management" documenting plaintiff's repositioning and turning. As plaintiff's expert notes, there were no such records of any turning or positioning of plaintiff until January 21, 2021, days after he became immobilized. Then between January 22, 2021, and January 26, 2021, there was no record of repositioning plaintiff in the required two-hour intervals. The expert presumed that, if such turning was occurring, it would have been documented. In total, Dr. Starer opines that plaintiff was not properly turned or repositioned for nine days. 
Evidence of a forming ulcer appeared on January 23 and 24, 2021, with blanchable redness appearing on plaintiff's buttocks. Plaintiff was on the ventilator until January 26, 2021, when he was transferred to a step-down unit. On January 27 and 28, 2021, plaintiff was noted as having moisture associated dermatitis. 
By January 29, 2021, hospital staff noted an open area on plaintiff's coccyx. On January 30, 2021, plaintiff was extubated. Plaintiff started having respiratory distress and was placed back on the ventilator on January 31, 2021. The parties dispute the date that plaintiff had an identifiable pressure ulcer: defendant claims January 31, but plaintiff claims January 29. 
The pressure ulcer became unstageable by February 4, 2021. According to the medical records, interpreted by plaintiff's expert, it appeared that plaintiff was positioned on his back, on the ulcer, for up to eight hours per day. The ulcer continued to worsen, becoming a stage IV wound by mid-February. A nurse specializing in wound care did not examine plaintiff until [*2]February 12, 2021.
Plaintiff was eventually extubated again on February 10, 2021, and was not placed back on the ventilator again. Defendant ordered a bariatric bed to assist with plaintiff's wound healing. As of March 1, 2021, plaintiff complained of continued and worsening pain in his gluteal and sacral region. The bariatric bed was finally received on March 3, 2021, after delays occasioned by supply chain issues during the pandemic. On March 14, 2021, plaintiff was discharged from the hospital to a rehabilitation facility.
Dr. Starer discussed the usual standard of care for wounds, from which he contends the hospital deviated. According to Dr. Starer, defendant must identify patients at admission who are at risk for developing pressure ulcers, such as through the Braden scale. Patients at risk for developing pressure ulcers must receive systematic and complete skin inspections at admission and daily during their admission, with results documented in the medical record. Individuals at risk must be provided special pressure reduction devices and be turned and repositioned every two hours. If a patient develops a pressure ulcer, the hospital must avoid positioning the patient on the ulcer (called "offloading"). The provider then must assess the ulcer initially and at least weekly to assess healing progress, and its progress documented and observed with dressing changes or treatment.
The defendant submitted an affidavit from Margaret Allers, RN, the Vice President of Patient Care and Chief Nursing Officer at defendant hospital. Ms. Allers focused primarily on how the defendant hospital was impacted by the second wave of the pandemic rather than disputing the particulars of plaintiff's treatment. According to hospital data, during the second wave of COVID-19, the hospital had more than 18 patients daily in its ICU, compared to 12-14 pre-pandemic. The hospital was experiencing staffing shortages due to the pandemic. Moreover, many of these ICU patients required much higher levels of care than usual, especially those on ventilators. Staff further had to engage in far more intensive personal protective equipment protocols, requiring full donning and doffing just to enter patient rooms to do basic care. More specialized equipment, such as the bariatric beds and turn-and-position mattresses, were more difficult to come by as the medical equipment rental companies were not fully operational. Such equipment typically is received within 24 hours, whereas it took a week to obtain one for plaintiff. She also noted the fragility of COVID-19 patients, where re-positioning could worsen their respiratory status.
As pertinent here, the bill of particulars includes allegations that the defendant failed to adequately assess him for risk of pressure ulcers, implement a plan to mitigate the risk of pressure ulcers, implement a plan of care to treat the actual pressure ulcers that occurred, and failed to undertake timely interventions to prevent or avoid deterioration of his pressure ulcers, amongst a host of other related allegations (see NYSCEF Doc No. 12). 
Discussion
Defendant argues that it is entitled to immunity under the EDTPA because plaintiff was a COVID-19 patient and that he developed pressure ulcers as a result of his need to be on a ventilator due to COVID-19. Defendant contends this means plaintiff's injuries were covered as "health care services" under the amended EDTPA because they were related to the treatment and care for COVID-19. The Court finds that the alleged deviations from the standard of care were not covered health care services and defendant is not entitled to immunity under the EDTPA.
A proponent of a motion for summary judgment must make a prima facie showing of [*3]entitlement to judgment as a matter of law with proof in admissible form sufficient to establish the lack of any material issues of fact (see Alvarez v Prospect Hospital, 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Once a showing of entitlement to summary judgment has been made, the burden shifts to the party opposing the motion for summary judgment, to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (see CPLR 3212 [b]; Alvarez v Prospect Hospital, supra; Zuckerman v City of New York, supra).
The EDTPA, as originally effective March 7, 2020, provided broad immunity to any liability, civil or criminal, if three requirements were met: "the services were arranged for or provided pursuant to a COVID—19 emergency rule or otherwise in accordance with applicable law; the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID—19 outbreak and in support of the State's directives; and the services were arranged or provided in good faith" (Mera v New York City Health and Hosps. Corp., 220 AD3d 668, 669 [2d Dept 2023]). The health services that the EDTPA covered were those "related to the diagnosis, prevention, or treatment of COVID—19; the assessment or care of an individual with a confirmed or suspected case of COVID—19; and the care of any other individual who presented at a health care facility or to a health care professional during the period of the COVID—19 emergency declaration" (id. at 669-670). The only conduct the EDTPA did not immunize was where "the defendants' acts or omissions constituted willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm" (Martinez v NYC Health and Hosps. Corp., 223 AD3d 731, 733 [2d Dept 2024]). 
Critical to the defendant's motion, however, is the substantial amendments to the statute effective August 2020, which govern plaintiff's January 16, 2021, through March 12, 2021, admission. The legislature limited the definition of "health care services" for which a provider would be immunized to just those "that relate to: (a) the diagnosis or treatment of COVID-19; or (b) the assessment or care of an individual as it relates to COVID-19, when such individual has a confirmed or suspected case of COVID-19" (see former PHL § 3081[5][a]-[b], as amended L.2020, c. 134, § 1, eff. Aug. 3, 2020.). This sharply limited the category of patients for which the immunity would apply (see Mera, 220 AD3d at 669-670; see also Ruth v Elderwood at Amherst, 209 AD3d 1281 [4th Dept 2022]). A provider would then be immune from liability in providing such "health care services" if:
(a) the health care facility or health care professional is providing health care services in accordance with applicable law, or where appropriate pursuant to a COVID-19 emergency rule;
(b) the act or omission occurs in the course of providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and
(c) the health care facility or health care professional is providing health care services in good faith.
(former PHL § 3082[1][a]-[c], as amended L.2020, c. 134, § 1, eff. Aug. 3, 2020). 
There are no appellate level decisions addressing the specific issue here, i.e. whether the EDTPA's definition of "health care services" after its August 2020 amendment includes [*4]treatment for medical conditions other than COVID-19. As the Court of Appeals cautions "statutory requirements conditioning suit must be strictly construed," the Court holds it does not (Kolnacki v State, 8 NY3d 277, 280 [2007]). 
Here, the plaintiff alleges injuries not from any deviations in the standard of care for his COVID-19 treatment, but rather skin ulcers from defendants' alleged failure to follow the standard of care for pressure ulcers. Wound management standards of care must be followed regardless of the reason for the patient's hospitalization. 
There are certainly triable issues of fact on whether defendant followed the standard of care in plaintiff's case. The record reflects that plaintiff suffered pressure ulcers incidental to his immobile state while he was on ventilator treatment. None of his injuries, however, directly relate to COVID-19 but rather departures from other standards of care. There is no indication from the legislative history that the Legislature intended to broadly immunize health care facilities for medical conditions beyond COVID-19 after its August 2020 amendments (see Ruth, 209 AD3d 1281; see also Senate Introducer's Mem., New York Bill Jacket, 2020 S.B. 8835, Ch. 134). To hold that a healthcare provider, after August 2020, was free to ignore unrelated standards of medical care just because a patient was diagnosed with COVID-19 is an overbroad reading of a limited statute, one not supported by any binding authority or legislative imprimatur. 
Though defendant's non-expert witness argues that the fragility of COVID-19 patients generally could lead to worsening respiratory status when repositioned, no expert testimony was submitted to suggest that the standard of care for wound injuries was different during the pandemic for COVID-19 patients specifically, or that plaintiff was such a patient. Rather, plaintiff alleges, and his expert opines, that his wounds were basically ignored until they became unstageable, which was contrary to the standard of care. 
Defendant's reliance on cases decided on the prior version of the statute, or those involving care directly for COVID-19, are not helpful here and do not compel a different result (see e.g. Mera v New York City Health and Hosps. Corp., 220 AD3d 668, 670 [2d Dept 2023] (pre-August 2020); Martinez v NYC Health and Hosps. Corp., 223 AD3d 731, 732 [2d Dept 2024] (pre-August 2020); Highsmith v Woodhull Med. Ctr., 83 Misc 3d 1203(A) [Sup Ct 2024] (pre-August 2020)). The prior version of this statute notoriously offered nearly unlimited immunity for health providers for all medical care during the COVID-19 emergency, related or not to the treatment of COVID-19 (see Mera, 220 AD3d at 669). The Legislature made clear it intended to depart from this pre-amendment type of broad immunity; the very immunity defendant appears to be seeking here. 
The limited appellate precedent on interpreting the post-August 2020 amendment support this approach and seem to limit its reach to just injuries for, or death from, COVID-19 (see Lara v S&J Operational, LLC, 2023-06114, 2025 WL 1242235, at *2 [2d Dept Apr. 30, 2025] (February 2021 death from COVID-19)). In the absence of more explicit guidance, and the requirement of the Courts to interpret statutory immunities strictly, the Court interprets PHL § 3081 and 3082 immunity as limited just to injuries or death from COVID-19. 
As defendant was not providing immunized health care services, as defined by PHL § 3081 with respect to plaintiff's pressure ulcer treatment, it failed to establish its' entitled to immunity under the EDTPA. Accordingly, the motion for summary judgment is denied, as it was the only grounds upon which defendant moved. "Since the defendants failed to meet their prima facie burden, it is unnecessary to determine whether the papers submitted by the plaintiff [*5]in opposition were sufficient to raise a triable issue of fact" (Dozier v Lee, 110 AD3d 670, 671 [2d Dept 2013]).
The Court has reviewed the parties remaining contentions, even if not referenced. All remaining contentions are moot in light of the Court's decision, or do not alter the Court's decision, and are therefore denied to avoid issuing a purely advisory opinion.
Accordingly, it is
ORDERED that defendant's motion for summary judgment (Seq. #4) is DENIED.
The foregoing constitutes the Decision and Order of the Court.
Dated: May 6, 2025
E N T E R:
HON. E. Loren Williams, J.S.C.

Footnotes

Footnote 1: The lower the number, the greater the risk of developing pressure ulcers.